**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

KEITH FOWLER,

Plaintiff,

v. Case No. 8:26-cv-116-KKM-AEP

AARON HOTHEM et al.,

Defendants.

---

**ORDER**

Plaintiff Keith Fowler sues Tampa Police Department Officers Aaron Hothem, Kyle Brown, and Jonathon Gonzalez under 42 U.S.C. § 1983 for claims related to Fowler's arrest. *See* Am. Compl. (Doc. 20). Hothem moves to dismiss the amended complaint for failure to state a claim. *See* Mot. (Doc. 25). For the reasons below, I grant the motion in part and deny it in part.

## I. BACKGROUND

On January 15, 2024, "[Fowler] and his son attended a playoff football game . . . at Raymond James Stadium in Tampa, Florida." Am. Compl. ¶ 9. As the pair were walking back to their vehicle after the game, "a group of unruly Tampa Bay Buccaneers fans approached [Fowler] and his son in a threatening manner." *Id.* ¶¶ 10–11. The fans "verbally accosted" Fowler and his son and "attempted to cause violence to them." *Id.* ¶ 12. The defendant officers Hothem,

Brown, and Gonzalez were "in the immediate vicinity" and "observed this threatening interaction." *Id.* ¶ 13.

"Fear[ing] for his safety and the safety of his son[,]" Fowler approached Hothem and "identified himself as a victim of threatening conduct." *Id.* ¶¶ 14–15. While in earshot of Brown and Gonzalez, Fowler asked Hothem to "detain the unruly fans so that [Fowler] and his son could walk safely to their vehicle." *See id.* ¶¶ 15–16. But Hothem "ignored [Fowler's] request for assistance and took no action." *Id.* ¶ 17. "Shortly" after Hothem ignored Fowler's request, the unruly fans "physically attacked" Fowler. *Id.* ¶ 18. Brown and Gonzalez observed the attack while Hothem was occupied "detaining other individuals involved in a separate assault on [Fowler's] son." *Id.* ¶¶ 19, 22.

At some point, an unknown officer "struck one of the unruly fans who [was] attacking [Fowler], enabling him to "temporarily escape from the assault[,]" or "attempt to disengage from the altercation and depart the area." *Id.* ¶¶ 21, 26. By that time, Fowler alleges that no officer had "given [him] any lawful commands" and that Brown and Gonzalez had observed that he "was not the initial aggressor." *Id.* ¶¶ 24, 29. Yet, "[a]s [Fowler] was gathering his steps to leave[,]" Hothem "deployed his taser" and delivered a "prolonged period of electric voltage" to Fowler's body. *Id.* ¶¶ 30–31.

Instead of "tak[ing] any steps to intervene" and defend Fowler from Hothem, Brown and Gonzalez "joined in the assault on [him]." *Id.* ¶¶ 37–38.

They "delivered strikes to [Fowler's] body" as he was being tased and "attempt[ed] to place [him] in handcuffs." *Id.* ¶¶ 39–40. During the assault, Fowler suffered a "fractured finger requir[ing] surgical repair." *Id.* ¶¶ 43–44.

After the alleged assault, "Hothem arrested [Fowler]" and "charged [him] with Affray and Resisting Arrest Without Violence." *Id.* ¶¶ 45, 50. The State ultimately dropped the charges against Fowler after reviewing "exculpatory" body cam footage. *Id.* ¶¶ 54–56.

Fowler filed this suit on January 14, 2026 against Hothem, Brown, and "Tampa Police Officer 1." *See* Compl. (Doc. 1). He brought four claims under Section 1983: unlawful arrest (Count I); excessive force (Count II); failure to intervene (Count III); and malicious prosecution (Count IV). *See* Compl. ¶¶ 22–87. I granted Brown and Hothem's motion to dismiss Counts I, III, and IV without prejudice and granted Fowler leave to amend. *See* 1st Mot. (Doc. 14); Order (Doc. 18).

Fowler amended his complaint, replacing defendant "Tampa Police Officer 1" with Gonzalez, and asserting two claims under Section 1983: unlawful arrest against Hothem (Count I); and excessive force against all defendants. Am. Compl. (Doc. 20) ¶¶ 57–86. Brown answered. Answer (Doc. 26). Gonzalez has not yet responded. Hothem asserts qualified immunity as a

defense and moves to dismiss both counts under Rule 12(b)(6) for failure to state a claim. *See* Mot. Fowler responds. *See* Resp. (Doc. 27).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" under Rule 12(b)(6), a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint's factual allegations are accepted "as true" and construed "in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Consideration is limited "to the well-pleaded factual

allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec.*, Inc., 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. at 544.

## III. ANALYSIS

As before, Hothem contends that Fowler fails to state a claim against him because he is entitled to qualified immunity. "The qualified immunity defense shields 'government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (citation modified).

"To receive qualified immunity, [a] public official 'must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.' " *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). Because neither side disputes that Hothem was acting within the scope of discretionary authority as a police officer, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Baker v. City of Madison*, 67 F.4th 1268, 1278 (11th Cir. 2023) (quoting *Lee*, 284 F.3d at 1194).

"To overcome a qualified immunity defense, the plaintiff must make two showings." *Corbitt*, 929 F.3d at 1311. The plaintiff must first allege "that the

defendant violated a constitutional right." *Id.* (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007)). He must then "show that the violation was clearly established." *Griffin Indus.*, 496 F.3d at 1199. "A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Gilmore v. Ga. Dep't of Corr.*, 144 F.4th 1246, 1258 (11th Cir. 2025) (en banc) (citation modified). For the second inquiry, the key question "is whether the state of the law gave the defendants 'fair warning' that their alleged conduct was unconstitutional." *Vaughan v. Cox*, 343 F.3d 1323, 1332 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Ordinarily, "it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.' " *Corbitt*, 929 F.3d at 1311 (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)). "Once an officer has raised the defense of qualified immunity, the burden of persuasion on that issue is on the plaintiff." *Id.* (citation modified).

**A. Count I – Unlawful Arrest**

Fowler alleges that Hothem "willfully, unlawfully, and unreasonably, arrested [him] without probable cause to do so." Am. Compl. ¶ 64. Hothem moves to dismiss because Fowler does not demonstrate a plausible claim that Hothem did not have arguable probable cause when he made the arrest. *See* Mot. at 4–7. Fowler responds that the "alleg[ations] that [Fowler] was a victim who requested police assistance, acted in self-defense, and was attempting to disengage" are "inconsistent with the mutual combat element required for affray." Resp. at 4–5. Fowler also says there was no arguable probable cause for Hothem to arrest him for resisting without violence. *See id.* at 11–12. I disagree as to arguable probable cause to arrest Fowler for affray.

An unlawful or false arrest claim "challenges as constitutionally deficient an officer's on-the-spot determination of probable cause." *Sylvester v. Fulton Cnty. Jail*, 94 F.4th 1324, 1330 (11th Cir. 2024). So, "[t]o succeed on a false-arrest claim, a plaintiff must establish (1) a lack of probable cause and (2) an arrest." *Brooks v. Miller*, 78 F.4th 1267, 1281 (11th Cir. 2023). An officer is entitled to qualified immunity, though, where he had "arguable probable cause, that is, where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest the plaintiff." *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998) (citation modified); *see Wilkerson v. Seymour*,

736 F.3d 974, 978 (11th Cir. 2013) (explaining that "what counts for qualified immunity purposes relating to probable cause to arrest is the information known to the defendant officers or officials at the time of their conduct") (citation modified).

Fowler fails to allege that Hothem lacked arguable probable cause. In effect, Fowler argues that, because he made Hothem aware that certain unruly fans had threatened Fowler, Hothem could not reasonably believe that Fowler—at some unspecified time later—voluntarily engaged in the affray rather than acted in self-defense. In other words, Hothem should have believed that Fowler "was the victim, not the aggressor." Resp. at 10. This reaches too far. In Florida, "[a] person commits an affray if he or she engages, by mutual consent, in fighting with another person in a public place to the terror of the people." § 870.01(1), Fla. Stat. Contrary to Hothem's suggestion, "mutual consent" does not require that he was "the aggressor." Resp. at 10.

Hothem could have reasonably believed that Fowler voluntarily engaged in the affray. Although Fowler alleges that Hothem observed the unruly groups' initially threatening behavior and received a request for assistance from Fowler, he does not allege how much time elapsed in between that request and the commencement of the "physical altercation." Am. Compl. ¶¶ 18, 23. Nor does Fowler allege that Hothem saw the start of the melee. In fact, he alleges just the opposite: "[d]uring the assault on [Fowler], Defendant Hothem

was detaining other individuals involved in a separate assault on [Fowler's] son." Am. Compl. ¶ 22; *see* Resp. at 2. Thus, a "reasonable officer[] in the same circumstances and possessing the same knowledge as [Hothem] could have believed" that Fowler engaged in the fighting "by mutual consent." § 870.01(1), Fla. Stat. There is nothing logically inconsistent with an individual being threatened, alerting police, and then being goaded into a consensual altercation. "No officer has a duty to prove every element of a crime before making an arrest." *Jordan v. Mosley*, 487 F.3d 1350, 1355 (11th Cir. 2007).

Finally, although neither party squarely addresses whether the absence of self-defense is an element of affray based on the "mutual consent" language, the answer does not affect the analysis. In *Davis v. City of Apopka*, the Eleventh Circuit considered whether Florida's Stand Your Ground Act changed Florida law such that the absence of self-defense "became an element of every violent crime in which self-defense is claimed," but concluded that, even if it did, "an officer could have reasonably concluded — based on the facts known to the officers at the scene of the arrest — that probable cause existed to believe that [the plaintiff] did not shoot his son in self-defense." 78 F.4th 1326, 1340–41 (11th Cir. 2023). As relevant there, the facts known to the officers were that the plaintiff's wife called 911 and reported that her husband "had a confrontation with their son." *Id.* at 1341. Ultimately, the officers "were [not] required to accept [the plaintiff's] self-serving claim of self-defense or to

hold off on arresting him because he made that claim." *Id.* at 1342. Similar reasoning applies here, where much of Fowler's claim hinges on his self-reporting threatening behavior to the officers.

If, on the other hand, self-defense is an affirmative defense which Fowler must raise, the result is the same: "an affirmative defense to an alleged crime does not necessarily vitiate probable cause." *Paez v. Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019); *see Fridley v. Horrighs*, 291 F.3d 867, 873 (6th Cir. 2002) (stating that in the probable cause determination for arrest, a "police officer is not required to inquire into facts and circumstances in an effort to discover if the suspect has an affirmative defense").

In either case, Fowler fails to allege sufficient facts showing that Hothem lacked arguable probable cause to arrest him for affray.[1] Because Fowler has had two opportunities to plead this claim, Count I is dismissed with prejudice.

**B. Count II – Excessive Use of Force**

Next, Hothem argues that he is entitled to qualified immunity on Fowler's claim that "[t]he force used by Defendant Hothem in deploying the taser was objectively unreasonable under the circumstances" in violation of the Fourth Amendment. *See* Am. Compl. ¶ 41; Mot. at 7–11. At this stage, I

[1] Because Hothem had arguable probable cause to arrest Fowler based on his role in the affray, I need not address whether Hothem also had arguable probable cause to arrest Fowler for resisting arrest without violence under § 843.02, Florida Statutes.

disagree. Construing all inferences in his favor, Fowler sufficiently alleges a violation of a clearly established constitutional right.

The Fourth Amendment right against unreasonable searches and seizures includes the right to be free from excessive force during an arrest. *See Johnson v. City of Miami Beach*, 18 F.4th 1267, 1272 (11th Cir. 2021). Courts must assess excessive force cases under an objective reasonableness standard. *See id.* Under that standard, courts evaluate the officer's use of force "on a case-by-case basis from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Brown v. City of Huntsville*, 608 F.3d 724, 738 (11th Cir. 2010). This analysis turns on "the facts and circumstances of each particular case," including a non-exhaustive list of factors, such as (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "Not every push or shove" violates the Fourth Amendment. *Id.*

With respect to tasers, the Eleventh Circuit has explained that unprovoked taser use "against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment." *Fils v. City of Aventura*, 647 F.3d 1272, 1289 (11th Cir. 2011). This differs from the constitutionally permissible "use of a taser gun to subdue

a suspect who has repeatedly ignored police instructions and continues to act belligerently toward police." *Zivojinovich v. Barner*, 525 F.3d 1059, 1073 (11th Cir. 2008) (citation modified); *see Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) ("Although being struck by a taser gun is an unpleasant experience, the amount of force [the officer] used—a single use of the taser gun causing a one-time shocking—was reasonably proportionate to the need for force and did not inflict any serious injury," where the plaintiff was "hostile, belligerent, and uncooperative"). Instead, it is "clearly establish[ed] that the repeated tasing of a subdued arrestee who has ceased any resistance or threatening conduct is excessive force in violation of the Fourth Amendment." *Helm v. Rainbow City*, 989 F.3d 1265, 1276 (11th Cir. 2021).

Fowler fairly alleges that Hothem's use of a taser was excessive in relation to the need for force and thus violated the Fourth Amendment's clearly established protections against excessive force for non-violent, non-resisting, and non-disobedient suspects. *See Fils*, 647 F.3d at 1289–90. In the immediate vicinity of Raymond James Stadium, Fowler alleges that a "group of unruly fans physically attacked [him] and his son." Am. Compl. ¶ 18. Fowler then "attempt[ed] to disengage from the altercation and depart the area" and "gather[ed] his steps to leave the scene of the assault." *Id.* ¶¶ 25, 26. At that point, and without any officer attempting to arrest Fowler or providing Fowler

any verbal commands, Hothem "delivered a prolonged period of electric voltage to [Fowler's] body through the taser." *Id.* ¶¶ 28–32.

The above facts supplied arguable probable cause for Hothem to arrest Fowler for his role in an affray, but not to use a taser. *See Fils*, 647 F.3d at 1289 (concluding that an officer's taser use constituted excessive force where the suspect, "[a]lthough . . . charged with resisting arrest," "did not ignore any verbal instructions, nor did he attempt to free himself from [the officer's] control once he was on the ground"). Indeed, the two cases Hothem relies upon are distinguishable because the officer in each instance used a taser only in response to a "hostile, belligerent, and uncooperative" suspect, *Draper*, 369 F.3d at 1278, or "to subdue a suspect who has repeatedly ignored police instructions and continues to act belligerently toward police." *Zivojinovich*, 525 F.3d at 1073. As alleged, the use of a taser in response to Fowler's non-violent, non-resisting, and non-officer-ordered conduct violated clearly established precedent. *See Helm*, 989 F.3d at 1276; *Fils*, 647 F.3d at 1289–90.

Hothem nonetheless tries to splice Eleventh Circuit precedent to defend the use of the taser as "de minimis" force, which he claims does not clearly establish that the use of a taser constitutes excessive force when used to effectuate a lawful arrest. *See* Mot. at 10–11. But that just repackages Hothem's primary argument that the use of a taser is not clearly established excessive force as to non-violent, non-resisting, and non-disobedient suspects,

which the Eleventh Circuit has rejected. *See Helm*, 989 F.3d at 1276; *Fils*, 647 F.3d at 1289–90; *see also Hayes v. City of Tampa*, No. 8:12-CV-2038-T-23TGW, 2014 WL 4954695, at *7 (M.D. Fla. Oct. 1, 2014) ("Tasing is not typically a 'de minimis' force that is ordinarily accepted during the process of an arrest.") (citation modified). In short, because Fowler alleges that he was tased despite "attempting to disengage from the altercation," while "pos[ing] no threat to any of the defendant officers at th[e] time," and "not resisting any lawful police commands," he states a claim for excessive force in violation of a clearly established Fourth Amendment right. Am. Compl. ¶¶ 26–29. Hothem's motion to dismiss is therefore denied with respect to Count II.

## IV. CONCLUSION

For the reasons explained above, Officer Hothem is entitled to qualified immunity on Fowler's claim for unlawful arrest. But Fowler's excessive force claim against Hothem survives. Accordingly, the following is **ORDERED**:

1. Hothem's Motion to Dismiss (Doc. 25) is **GRANTED IN PART AND DENIED IN PART.**
2. Count I of the Amended Complaint (Doc. 20) is **DISMISSED WITH PREJUDICE.**

**ORDERED** in Tampa, Florida, on August 14, 2026.

Kathryn Kimball Mizelle
Kathryn Kimball Mizelle
United States District Judge